

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

January 16, 1974

The Honorable Maurice Coats
Executive Director
Texas Commission on the Arts and
  Humanities
403 Sixth Street
Austin, Texas 78701

Opinion No. H- 209

Re: Allowable uses of
revenue created at the
local level by the
Hotel Occupancy Tax

Dear Mr. Coats:

Your request for an opinion concerns whether or not the City of
Temple may use a portion of the revenue collected from the Hotel Occupancy
Tax to contract with the Temple Cultural Activities Center for cultural
services to the community. From a broader perspective, you ask "can
units of local government use revenues collected from the Hotel Occupancy
Tax to contract with nongovernmental organizations which provide appropriate
programs or services provided in [Art.] 1269j-4.1, [V. T. C. S. ]?" You have
advised us of the following facts:

> "The Temple Cultural Activities Center is a nonprofit
> corporation. . . . It is a membership organization which
> provides programs in the arts and humanities for all of
> Temple. . . . The Center sponsors performances of
> music, theatre, and dance, exhibits of the visual arts,
> programs in the humanities, and a varied program of
> instruction in all of these areas.
>
> "The Center has nine organizational members [including
> the Temple Civic Theatre, the Temple Boys Choir, etc.]
> . . . . These groups have a combined membership of
> approximately 1, 200 persons. They provide the major
> artistic and non-academic humanistic programs for almost
> 100, 000 people.

"The Center's main purpose is the development of
programs in the arts for the general public of central
Texas. . . ."

The Hotel Occupancy Tax to which you refer is authorized by Art.
1269j-4. l,  V. T. C. S. , which applies to incorporated cities with a popula-
tion of 8, 500 or more.   The population of Temple, a Home Rule City,
exceeds that figure.   Section 3c of the statute reads:

"(a) The revenue derived from any occupancy tax
authorized or validated by this Act may only be used
for:

"(1) the acquisition of sites for and the construction,
improvement, enlarging, equipping, repairing, opera-
tion, and maintenance of convention center facilities
including, but not limited to, civic center convention
buildings, auditoriums, coliseums, and parking areas
or facilities for the parking or storage of motor vehicles
or other conveyances located at or in the immediate
vicinity of the convention center facilities;

"(2) the furnishing of facilities, personnel and materials
for the registration of convention delegates or registrants;

"(3) for advertising for general promotional and tourist
advertising of the city and its vicinity and conducting a
solicitation and operating program to attract conventions
and visitors either by the city or through contracts with
persons or organizations selected by the city.

" . . . . "

The powers of cities are wholly statutory.  Home Rule cities, such as
Temple, can contract with private persons or entities for the provision of
services its citizens require, Article 1176, V. T. C. S.  See Barrington v.
Cokinos, 338 S. W. 2d 133 (Tex. 1960); City of Big Spring v. Board of Control

404 S. W. 2d 810 (Tex. 1966); City of Crosbyton v. Texas-New Mexico Utilities Co., 157 S. W. 2d 418 (Tex. Civ. App., Amarillo, 1942, writ ref., want merit). However, we do not believe the permissible uses of occupancy tax revenues include general efforts to support the arts. It may be that the programs you describe, in certain situations, could have the ancillary effect of contributing to a "solicitation and operating program to attract conventions and visitors," but as you state in your inquiry, their main purpose is the development of programs in the arts for the general public of central Texas. Before Hotel Occupancy Tax funds could be used to purchase services, activities or programs for the development of the arts, we believe they would need to be directly related to the attraction of conventions or tourists. The question of whether such services or activities have such a direct relationship is ultimately one of fact for the courts, but should the city determine initially that a particular program would be developed as a means directly related to attracting conventions and visitors, we think it might then contract with the Center for such a program, and legally fund the contract with Hotel Occupancy Tax funds.

Although we are sympathetic with efforts to support the arts, it is our conclusion that the statutory provisions for use of occupancy tax revenues do not permit expenditures from those funds for general cultural or artistic activities except in the limited instances where the activity is developed and carried out so as to be directly related to the attraction of conventions or tourists.

## SUMMARY

The City of Temple may not use revenue collected from the hotel occupancy tax to contract for operation of the Temple Cultural Activities Center, except for programs which are developed so as to directly relate to the attraction of conventions and visitors to the city.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

_____
LARRY F. YORK, First Assistant

_____
DAVID M. KENDALL, Chairman
Opinion Committee